IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| TOMMY RICHESIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:09-CV-241 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of

defendant Commissioner's final decision denying plaintiff's claim for disability insurance

and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social

Security Act. For the reasons that follow, defendant's motion for summary judgment [doc.

14] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1965. He applied for benefits in June 2007, claiming to

be disabled by "steel plate in neck; ruptured vertebra and disk." [Tr. 87, 95, 112]. Plaintiff

alleges a disability onset date of June 15, 2007. [Tr. 87, 95]. His applications were denied

initially and on reconsideration. Plaintiff then requested a hearing, which took place before

an Administrative Law Judge ("ALJ") in September 2008.

In January 2009, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "cervical disc disease and chronic lumbar pain," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 12, 14]. The ALJ found plaintiff to have the residual functional capacity ("RFC") for light exertion "that does not require reaching in all directions and that allows for a sit/stand option." [Tr. 14]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the national economy. [Tr. 16-17]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, Appeals Council review, despite the submission and consideration of additional medical records. [Tr. 1-4].[1] The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

---

[1]  "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can, however, remand a case for further proceedings, but only if the claimant shows that his evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id*. Plaintiff's briefing to this court does not refer to his Appeals Council evidence or to sentence six. The issue is thus waived, and plaintiff's additional medical evidence [Tr. 363-83] has *not* been considered by this court. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

## II.

### *Background*

Plaintiff reports past relevant employment as a carpenter and factory worker. [Tr. 113]. He testified that he quit his last job as a machine operator in June 2007 due to absenteeism caused by back and neck pain. [Tr. 22-24]. Plaintiff claims to be "in tremendous pain all the time. I can't sit, stand or lay too long. Everything I do makes the pain worse." [Tr. 112]. Plaintiff has told the Commissioner that because of pain, "I can't do anything. . . . I hurt so bad in the morning that I can't get out of bed." [Tr. 119].

Despite these representations, plaintiff admittedly remains able to cook and grill meals, vacuum, wash clothes, sweep, dust, and raise two or three children as a single parent. [Tr. 31, 89, 96, 135, 137, 347]. Plaintiff can "take care of [his] personal needs" and "is independent with activities of daily living." [Tr. 153, 346].

Although his administrative hearing testimony suggested that he can only drive "about an eighth of a mile to the store and back every now and then" because of drowsiness caused by his pain medication [Tr. 27-28], plaintiff has elsewhere acknowledged being able to drive his children to their mother's home, visit his grandmother and friends, and take his children to the movie theater or video rental store several times per week. [Tr. 136, 139]. Further, subsequent to his alleged disability onset date, plaintiff has consistently told his medical sources that he suffers no medication side effects. [Tr. 245-46, 287, 289, 339-40].

At the administrative hearing, the ALJ expressed concern over inconsistencies in plaintiff's statements. Plaintiff testified that two of his children live with him. [Tr. 31]. Elsewhere, on his benefits applications, plaintiff told the Commissioner that three of his children live with him. [Tr. 89, 96]. The intake records of Takoma Regional Hospital Center for Rehab ("Takoma") show that plaintiff reported he lives alone. [Tr. 346]. The ALJ asked plaintiff about this discrepancy. Plaintiff replied, "I never told anybody I lived alone." [Tr. 32].

The Takoma intake records read in pertinent part, "Patient indicates he lives [in] the home alone and is independent with activities of daily living." [Tr. 346]. After plaintiff testified that his minor children live with him, perform his yard work for him, and "help with the housework and stuff like that," the ALJ observed, "interesting, you're not jiving with the report here on what you told the hospital . . . . So I'm telling you, something ain't right. You're telling a different story here than you did to them." [Tr. 32-33].

III.

*Relevant Medical Evidence*

Since a 2002 automobile accident in which as an unrestrained driver he was thrown through a windshield, plaintiff has complained of back, neck, and right arm pain. [Tr. 219, 257]. Surgery was advised at that time, but plaintiff "refused treatment." [Tr. 272].

Dr. Steven Hamel performed surgery in November 2006 following a diagnosis of multilevel degenerative disc disease with a ruptured disc at C6-7. [Tr. 221, 230, 232]. On

4

December 20, 2006, Dr. Hamel wrote that plaintiff was "doing very well." [Tr. 225]. On

January 17, 2007, Dr. Hamel again wrote that plaintiff was "doing well." [Tr. 224]. Plaintiff

was released to return to work with no restrictions, and Dr. Hamel scheduled no further

appointments. [Tr. 224]. Physical therapy was prescribed, but plaintiff reported that "it

seemed to make it worse so I stopped going." [Tr. 116].

At the request of the Commissioner, Dr. Marianne Filka performed a limited

consultative examination in August 2007 to "specifically look at range of motion of his neck

and back." [Tr. 272]. Range of neck motion was "fairly restricted." [Tr. 274]. Forward

flexion of the lower back was also limited. [Tr. 274].

In September 2007, nonexamining Dr. Lloyd Walwyn completed a Physical

RFC Assessment. Dr. Walwyn opined that plaintiff could work at the medium level of

exertion. [Tr. 277-83].

Nonexamining Dr. Denise Bell completed a Physical RFC Assessment in

January 2008. Dr. Bell concluded that plaintiff could perform no more than light exertion.

[Tr. 329-35]. In addition, Dr. Bell checked "limited" for the activity of "[r]eaching all

directions (including overhead)." [Tr. 331]. Dr. Bell's additional notes clarify that she

thought plaintiff would be limited to no more than frequent overhead bilateral reaching. [Tr.

331, 335]. Dr. Bell predicted no limitation as to any other form of reaching. [Tr. 329-35].

Dr. Bell completed her RFC form on January 29, 2008. The following day,

plaintiff was seen for the first time by Takoma Medical Associates. Plaintiff was noted to

have been "on huge amounts of pain meds." [Tr. 336]. Plaintiff reported, however, that he had been out of medication for four months and had been "living with it." [Tr. 336].

Cervical imaging was performed in August 2008. [Tr. 361-62]. Dr. Scot Vermilliion noted advanced degenerative disease at C4-5 and C5-6, herniation at C3-4, and other mild or moderate findings. [Tr. 361-62].

IV.

*Vocational Expert Testimony*

Cathy Sanders ("Ms. Sanders" or "VE") testified as a vocational expert at the administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's age, education and work history. The ALJ asked Ms. Sanders to adopt the limitations found in Dr. Bell's RFC assessment, meaning that the hypothetical claimant would be restricted to light work with no more than "frequent" bilateral overhead reaching. [Tr. 36, 331, 335]. The ALJ also imposed a sit/stand option. [Tr. 36-37]. Ms. Sanders testified that jobs such as ticket clerk, cashier, parking lot attendant, information clerk, and sorter would be available in sufficient numbers in the national economy under that hypothetical. [Tr. 37]. If plaintiff's subjective complaints were fully credited, the VE testified that all employment would be precluded. [Tr. 37-39].

V.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[2]  Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520).  Plaintiffs bear the burden of proof during the first four steps.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *See id.*

---

[2] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  42 U.S.C. § 1382.  "Disability," for SSI purposes, is defined the same as under § 423.  42 U.S.C. § 1382c(a)(3).

VI.

*Analysis*

Plaintiff argues that the ALJ's RFC findings are inconsistent with Dr. Bell's assessment. Plaintiff also argues that the ALJ misevaluated the medical evidence in general. The court will address these issues in turn.

A. <u>Dr. Bell</u>

The administrative record contains two medical/vocational assessments (Drs. Walwyn and Bell). The ALJ gave "great weight" to the opinion of Dr. Bell, which was the more restrictive of the two. The ALJ wrote that his RFC findings were "consistent with" Dr. Bell's opinion, but plaintiff argues that is not the case.

The Physical RFC Assessment is a preprinted form completed by reviewing state agency physicians. As described above, at the preprinted category "[r]eaching all directions (including overhead)," Dr. Bell ticked "limited." [Tr. 331]. Dr. Bell did not stop there, however. Instead, she made additional notes to clarify that her prediction concerned only bilateral overhead reaching, which she thought plaintiff could do no more than "frequently." [Tr. 331, 335]. Those specific notations make clear that Dr. Bell predicted no limitation as to any other form of reaching [Tr. 329-35], and her assessment is not a confusing document.

In posing his vocational hypothetical, the ALJ instructed the VE to "[a]ssume everything in Exhibit 12F were true and correct." [Tr. 36]. Dr. Bell's report is marked as

Exhibit 12F of the administrative record. The VE clearly reviewed and understood the report, as evidenced by her statement, "Yes. 12F has limited reach to overhead at frequent . . . ." [Tr. 36]. The VE then identified existing jobs consistent with that limitation.

The RFC finding in the ALJ's written opinion does not precisely track the "bilateral overhead" language of Dr. Bell's report. Instead, the ALJ referred only to the entire preprinted category of "reaching all directions." The ALJ, "After careful consideration of the entire record, . . . [found] that the claimant has the residual functional capacity for light work that does not require reaching in all directions and that allows for a sit/stand option . . . ." [Tr. 14]. Because the ALJ's opinion on its face refers to reaching in "all directions" rather than the more specific activity of bilateral overhead reaching, plaintiff argues that the ALJ is not entitled to rely on the VE's testimony:

> In this case, the ALJ's hypothetical question to the VE, upon which a finding of jobs was based, did not reflect all of the limitations noted in the ALJ's own residual functional capacity finding. In his decision, the ALJ determined Plaintiff can only perform work that does not require reaching in all directions . . . . However, in his hypothetical question, upon which a finding of jobs was based, he asked the VE to consider the limitations in Exhibit 12F . . . .

[Plaintiff's brief, p. 13].

The ALJ's wording was imprecise, but the court finds any error to be harmless. An administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). An error is typically harmless where the ALJ's reasoning can be inferred from his overall discussion. *Hall v. Comm'r of Soc. Sec.*, 148 F.

App'x 456, 463 (6th Cir. 2005).

The ALJ gave "great weight" to Dr. Bell's report and wrote that his own RFC findings were "consistent with" Dr. Bell's. He instructed the VE to assume that everything in that assessment was "true and correct," and the VE clearly understood the specific limitations imposed by Dr. Bell. The ALJ's opinion ties the VE's testimony to his RFC finding. [Tr. 17]. True, the written decision would have been more exact had the ALJ included the "bilateral overhead" language, but his reasoning can be clearly inferred from his overall discussion of that report (both in writing and at the administrative hearing). The ALJ clearly intended to adopt Dr. Bell's assessment in full. Further, technically, the language used by the ALJ is not incorrect. Because Dr. Bell did not think plaintiff can *constantly* reach overhead with both arms, he therefore is limited to jobs that do not require reaching in all directions. The administrative record contains no opinion evidence to support any other reaching restriction.

What the ALJ intended is obvious. Any error is deemed harmless.

### B. Subjective Complaints and Objective Evidence

Plaintiff contends that his complaints of disabling pain are supported by the objective evidence of record, most specifically the August 2008 cervical imaging which noted "advanced degenerative disease." The framework for analyzing subjective complaints of pain is set forth at 20 C.F.R. §§ 404.1529 and 416.929, and is summarized as follows:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In the present case, there is objective medical evidence of problems with plaintiff's back and neck. At issue is *the extent* to which those conditions limit the ability to work. On that point, relevant considerations include the claimant's daily activities, the side effects of medication, the treatment received, and inconsistencies in the claimant's self-reporting. *See* 20 C.F.R. § 404.1529(c)(3)-(4).

In his ruling, the ALJ considered the § 404.1529 factors and reached a decision supported by substantial evidence. His decision will therefore be affirmed. The ALJ discussed and considered the medical record at length, including the August 2008 imaging. [Tr. 12-16]. He noted that plaintiff is able to function independently and raise his children. [Tr. 13]. He noted that plaintiff reports no medication side effects and that he was able, for at least a four-month period, to "live with" having no medication at all. [Tr. 13]. The ALJ observed that plaintiff has at times refused recommended treatment. [Tr. 12-13]. The ALJ discussed plaintiff's activity level, accurately deeming it "inconsistent with an individual who is totally disabled." [Tr. 15-16].

The ALJ also observed, both in his written decision and at the administrative hearing, that there are issues of inconsistency in plaintiff's self-reporting. Several of those

issues are noted in section II of this memorandum. For example, plaintiff's representation to the Commissioner that "I can't do anything" is a clear exaggeration. Most striking to this court is plaintiff's sworn testimony that his driving is limited to occasional one-eighth mile trips due to medication-induced "drowsiness" and "swimmy-headedness." [Tr. 27]. As noted above, plaintiff has repeatedly told his narcotic providers that he experiences no medication side effects. One of those representations was made within three months of the administrative hearing. [Tr. 339]. On the instant record, it was certainly reasonable for the ALJ to conclude that plaintiff is exaggerating his symptoms.

According to plaintiff, at his last job he was required to lift fifty to seventy pounds continuously throughout the workday. [Tr. 127]. As correctly observed by the ALJ [Tr. 13], it is noteworthy that approximately one month after quitting that heavy exertion job plaintiff told a health care provider that his pain had decreased by 80%. [Tr. 245].

Although plaintiff disagrees, the ALJ and the state agency physicians credited his subjective complaints to a large degree. The ALJ concluded that plaintiff is not presently capable of returning to heavy or medium exertion. The ALJ gave plaintiff the benefit of the doubt by fully adopting the most restrictive vocational assessment contained in the record.

For the reasons discussed herein, the decision below survives substantial evidence review and will not be reversed by this court. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the

courts.") (citation omitted).  The Commissioner's final decision will be affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge